# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ISAAC PERDOMO-PAZ, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 20-CV-00221-SRB |
| | ) |
| MICHELE BUCKNER, | ) |
| | ) |
| Respondent. | ) |

## ORDER

Before the Court is Petitioner Isaac Perdomo-Paz's ("Petitioner") First Amended Petition for a Writ of Habeas Corpus. Doc. 20. On October 15, 2021, the Court denied Petitioner's writ of habeas corpus on Grounds One through Seven. Doc. 38. The Court held an evidentiary hearing on April 12, 2022, to determine and resolve disputed facts relating to Ground Eight. After considering the evidence and the parties' arguments, and for the reasons stated below, Ground Eight of the First Amended Petition is DENIED.

### I. BACKGROUND

The extensive factual history of this case is set forth more fully in the Court's October 15, 2021 Order and will not be repeated here. Doc. 38 at 2-5. The facts relevant to Ground Eight are discussed below.

Petitioner challenges his 2012 Missouri state court conviction and sentence for two counts of first-degree murder, one count of second-degree murder, and three counts of armed criminal action. Petitioner was found guilty following a jury trial in the Circuit Court of Clay County, Missouri, and sentenced to life without parole on the two first-degree murder counts, life imprisonment on the second-degree murder count, and fifty years' imprisonment for each count of armed criminal action. Doc. 31-9 at 1-2. The Missouri Court of Appeals, Western District, affirmed Petitioner's conviction and sentence on direct appeal. *Id.* Petitioner's motion for postconviction relief, filed pursuant to Mo. Sup. Ct. R. 24.15 was denied by the Missouri Supreme Court. *Id.*

Following the Missouri Supreme Court's denial of postconviction relief, Petitioner filed this habeas case under 28 U.S.C. § 2254. After the appointment of counsel, Petitioner filed his

First Amended Petition for a Writ of Habeas Corpus. Doc. 20. The Court denied and dismissed Grounds One through Seven of Petitioner's petition. Doc. 38. Petitioner, for the first time before any court, also raised Ground Eight. In that ground, Petitioner argues that the State failed to disclose evidence that Diana Madera's ("Madera") testimony at trial was compelled by police threats. Doc. 20 at 49. Specifically, Petitioner contends that the State failed to "disclose material exculpatory impeachment evidence that could have been used to attack the credibility of . . . Madera and . . . the State knowingly utilized Madera's perjured testimony to secure Petitioner's convictions." *Id*. Petitioner argues that Madera's affidavit shows that the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and/or knowingly used false testimony to convict him in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). Doc. 20. at 49–56.

In its prior Order, this Court explained that this argument is procedurally defaulted because Petitioner failed to raise the argument before the Missouri Supreme Court. Petitioner argues cause excusing the default exists because Madera's recantation only recently became available to him, and Petitioner was prejudiced by the prosecutor's failure to disclose the police threats or correct her allegedly perjured testimony at trial. This Court found that an evidentiary hearing was necessary to determine whether cause and prejudice exists to excuse this procedural default and, if so, whether his claims warrant habeas relief. Doc. 38 at 38.

With his amended petition, Petitioner submitted an affidavit, executed by Madera on August 29, 2020, in which she recants her identification of Petitioner as the shooter. Doc. 20-1. In her affidavit, Madera states, *inter alia*, the detectives who questioned her about the shooting: (1) pressured her to say Petitioner was the shooter; (2) threatened to deport her if she did not say Petitioner was the shooter; (3) told Madera she would be kept safe if she said Petitioner was the shooter; and (4) asked Madera whether she wanted to have her baby in jail. *Id.* at 1. Madera states that she initially told the detectives that she saw nothing, but because of the pressure she thereafter lied and told them that she witnessed Petitioner shoot the men. *Id.* Madera's affidavit asserts that she made this statement to detectives to protect herself and her unborn child from deportation. *Id.* Madera also states that the detectives convinced her to testify that Petitioner shot the three men because he was jealous that they were flirting with Trejo. *Id.* Madera's affidavit further asserts that this motive was untrue, that she did not see Petitioner shoot the men, and that, for years she "felt bad" about her testimony. *Id.* at 2.

2

At the evidentiary hearing, the Court heard testimony from Madera as well as several officers involved in Madera's interrogation, including Detectives Dan Wood, Victor Chavez, Mark Estrada, Scott Baker, Vincent Pernice, and Officer Jose Madera. The Court also watched video recordings of some of the interrogations. Both parties ended the hearing with closing arguments.

## II. LEGAL STANDARD

### A. Cause and Prejudice

"The U.S. Supreme Court has established that 'federal habeas review of [defaulted] claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'"[1] *Turnage v. Fabian*, 606 F.3d 933, 941 (8th Cir. 2010) (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)). "[C]ause . . . ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Cornell v. Nix*, 976 F.2d 376, 380 (8th Cir. 1992) (quoting *Murray v. Carrier,* 477 U.S. 478, 492 (1986)) (internal quotations omitted). "An external impediment can be the reasonable unavailability of the factual basis for the claim." *Id*. (internal citations and quotations omitted). The Eighth Circuit recognizes "'interference by officials' or the prior unavailability of legal or factual bases for relief as types of objective external factors that might serve as cause capable of excusing default." *Wooten v. Norris*, 578 F.3d 767, 779 (8th Cir. 2009) (quoting *Coleman*, 501 U.S. at 753). To demonstrate "actual prejudice," a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (internal citation and quotations omitted).

### B. *Brady v. Maryland*

In *Brady*, the Supreme Court held "'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87). "[T]he duty to disclose such evidence is applicable even though there has been no request by the accused, *United States v. Agurs,* 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley,* 473 U.S. 667, 676 (1985)." *Strickler*, 527 U.S. at

---

[1] Petitioner did not assert the "fundamental miscarriage of justice" exception in his pleadings.

280. "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id*. (quoting *Bagley*, 473 U.S. at 682) (further citation omitted). "[T]he rule encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Strickler*, 527 U.S. at 280-81 (citation omitted). To "comply with *Brady,* therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police.'" *Id*. at 280 (quoting *Kyles v. Whitley,* 514 U.S. 419, 437 (1995)).

"[T]he term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence—that is, to any suppression of so-called '*Brady* material'—although, strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id*. at 281. The following three components must be satisfied to demonstrate a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id*. at 281-82 (emphasis added).

"Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)." *Kyles*, 514 U.S. at 434 (citing *Bagley,* 473 U.S. at 682) (further citation omitted). "*Bagley*'s touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. As such, "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id*. (quoting *Bagley,* 473 U.S. at 678).

    C. *Napue v. Illinois*

"[T]he 'failure of the prosecutor to correct the testimony of [a] witness which he knew to be false,' *Napue*, 360 U.S. at 265, or 'should have known' to be false, *United States v. Martin*, 59

4

F.3d 767, 770 (8th Cir. 1995), constitutes a denial of a defendant's constitutional right to due process[.]" *United States v. Ruzicka*, 988 F.3d 997, 1004 (8th Cir. 2021). "A *Napue* violation requires a new trial on any count of conviction on which the violation could 'in any reasonable likelihood have affected the judgment of the jury.'" *Ruzicka*, 988 F.3d at 1004 (quoting *Napue*, 360 U.S. at 271).

"When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (citing *Napue*, 360 U.S. at 269) (internal quotations omitted). "We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .'" *Id*. (citation omitted). "[F]inding . . . materiality of the evidence is required under *Brady*." *Id*. (citing *Brady*, 473 U.S. at 87). "A new trial is required if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . ." *Id*. (quoting *Napue*, 360 U.S. at 271) (internal quotations omitted).

### III. ANALYSIS

The parties agree that Petitioner failed to raise Ground Eight before the Missouri Supreme Court, and therefore the argument is procedurally defaulted. *See Turnage*, 606 F.3d at 940 ("Although the petitioner raises a federal due process claim in his briefs to this court, his failure to present that claim to the [state] Supreme Court means that it is procedurally defaulted[.]"). As a threshold issue, the Court finds Petitioner has shown cause for failing to raise this argument before the Missouri Supreme Court. Petitioner was not aware of Madera's recanted testimony until sometime during the summer of 2020, after Petitioner filed this case in federal court. Respondent does not disagree or otherwise provide conflicting evidence on this issue. In turn, the Court finds Petitioner has demonstrated cause to excuse the procedural default. The Court will thus turn to whether Petitioner has demonstrated he has met the prejudice requirement.

Petitioner's *Brady* and *Napue* arguments both rest on the credibility of Madera's affidavit. Specifically, Petitioner's *Brady* argument asserts that the State failed to "disclose material exculpatory impeachment evidence that could have been used to attack the credibility of Diana Madera and . . . the State knowingly utilized Madera's perjured testimony to secure Petitioner's convictions." Doc. 20 at 49. Petitioner's *Napue* claim is related to his *Brady* violation claim, in that he asserts that Madera's affidavit "unquestionably established that petitioner's convictions

5

were secured through perjured testimony[,]" and, "with the knowledge of state agents, she deceived the jury regarding the threats and promises that were made to her regarding her immigration status that induced her to implicate petitioner and later testify against him." Doc. 20 at 53–54. Petitioner asserts this testimony deliberately misled the jury. *Id.* Respondent disagrees, arguing that "[g]iven the unreliability of Madera's new affidavit, its weak probative value, and the other independent evidence of [Petitioner's] guilt," the Court cannot excuse the procedural default and review Ground Eight. Doc. 31 at 31. The Court agrees with Respondent.

While recanted testimony is looked upon with suspicion, "recanted testimony that bears on a victim's credibility or directly on the defendant's guilt will warrant a new trial if it would probably produce an acquittal on retrial." *United States v. Dogskin*, 265 F.3d 682, 685 (8th Cir. 2001) (internal citation omitted). "When the claim of newly discovered evidence is based on a recantation, the district court must first determine whether the recantation is credible." *United States v. Rouse,* 410 F.3d 1005, 1009 (8th Cir. 2005). "In this regard, 'the real question . . . is not whether the district judge believed the recantation, but how likely the district judge thought a jury at a second trial would be to believe it.'" *Id.* (quoting *United States v. Grey Bear*, 116 F.3d 349, 350 (8th Cir. 1997)).

Upon review, the Court finds that Petitioner has failed to establish prejudice to excuse the procedural default of his *Brady* and *Napue* claims because the Court does not find Madera's late recantation credible. Madera's affidavit and testimony were inconsistent with the evidence presented at the hearing. First, Madera's affidavit states that when she came home from school, two police detectives were waiting for her at her mother's house. Those detectives took her to the Independence, MO, police station. Madera's affidavit claims that it was during this police-station interrogation the police officers pressured her to testify that it was Petitioner who shot the three victims. However, Madera was never interrogated at the Independence, MO, police station. She was interrogated at the Liberty, MO, police station. Furthermore, the police-station interviews were all fully recorded, and not one shows the police threatening Madera. The only interrogation not fully recorded took place in a conference room at Madera's high school. If Madera was ever pressured by the police, it would have had to occur during this interrogation, not during an interrogation in Independence, MO. The Court finds that Madera changed her story at the hearing to claim the unrecorded school conference interview was where the police pressure occurred.

6

Second, Madera's affidavit states, and Madera testified at the hearing, that she saw Pedro Rodriguez, the other eyewitness, looting the victim's pockets after they were shot. But she specifically denied seeing Pedro Rodriguez looting the victim's pockets during the first interrogation. Madera admits the police never threatened or otherwise pressured her during that first interrogation.

Third, Madera testified at the hearing that she never knew anyone by the name of "Speedy" or "Disaster." However, during the first interrogation, video evidence shows Madera referred to two individuals as "Speedy" and "Disaster" and stated they were at the hotel the night of the shooting. The inconsistencies on basic facts such as when and where the allegedly threatening interrogation occurred, what Madera saw at the hotel the night of the shootings, and who Madera knew was present at the hotel undermines Madera's credibility.

The Court also finds credible the testimony of the detectives. Each detective consistently testified as to interrogation locations and time, and denied pressuring Madera to falsely testifying against Petitioner. The available video evidence, including a follow-up interrogation conducted after the allegedly threatening interrogation at the high school, corroborates their testimony that the detectives maintained a non-coercive tone with Madera. The credibility of the detectives' testimony further undermines Madera's recantation.

After a review of the entire record, including the testimony discussed above, the Court finds that Madera's recantation is not credible. In turn, the Court finds there is no reasonable likelihood that a jury at a second trial would believe Madera's recantation.[2] Petitioner has thus failed to establish actual prejudice under Ground Eight to excuse the procedural default.

### IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Ground Eight of Petitioner's First Amended Petition of Writ of Habeas Corpus, Doc. 20, is DENIED. The clerk of court is directed to enter judgment in favor of Respondent Michele Buckner.

**IT IS SO ORDERED**.

/s/ Stephen R. Bough
STEPHEN R. BOUGH
Dated: May 2, 2022    UNITED STATES DISTRICT JUDGE

---

[2] The Court also finds other evidence supports Petitioner's guilt, including the destruction of his vehicle days after the shooting and inconsistent statements he made to police. The other evidence of Petitioner's guilt is discussed in further detail in the Court's prior Order. Doc. 38.

7